378 So.2d 934 (1979)
STATE of Louisiana
v.
Jeff H. DUPUIS, Bernis H. Davidson, John R. Perdian, Wilbur L. Smith, Jonathan Grassi, James R. Green, Jr. and Larry A. Cannon.
No. 64762.
Supreme Court of Louisiana.
December 13, 1979.
Rehearing Denied January 28, 1980.
*935 Andrew C. Hall, Storace, Hall & Hauser, Miami, Fla., Chester R. Cedars, Gauthier & Cedars, Ltd., Breaux Bridge, for Jonathan Grassi and Lawrence A. Cannon.
Allan J. Hall, Hall & Fishman and Robert W. Chestney, Hall & Fishman, Atlanta, Ga., John Larry Vidrine, Ville Platte, for Wilber L. Smith and James R. Green, Jr.
Ferdinand J. Kleppner, Grisbaum & Kleppner, Metairie, for Jeff Dupuis, John Zerbe and Bernis H. Davidson, defendants-appellants.
*936 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., George W. McHugh, Jr., Dracos D. Burke, Asst. Dist. Attys. for plaintiff-appellee.
BLANCHE, Justice.[*]
The defendants were charged by a bill of information with the possession of marijuana with the intent to distribute in violation of La.R.S. 40:966(A). After the defendants' motion to suppress the twenty tons of marijuana as evidence was denied, they plead guilty reserving all rights to appeal the denial of the motion to suppress. Each defendant was sentenced to three years at hard labor and fined $15,000, in default of which each would serve two years.
The police were led to the Dupuis property and the marijuana through a series of events beginning with the discovery of an aircraft in Georgia loaded with 23,000 pounds of marijuana. The aircraft was registered to Marvin Zylstra. A few days before Jeff Dupuis had rented a car as the agent of Marvin Zylstra from an Avis Rent-a-Car facility in the Dalton, Alabama airport. After a check of the Breaux Bridge, Louisiana address given by Dupuis, a refrigerated truck was found on the property. This truck was registered to a Mr. Zerbe, who was also known to be an associate of Zylstra through information obtained from the El Paso Intelligence Center. On June 11, 1978, the refrigerated truck left the Dupuis property and returned June 15, 1978 along with two bobtail trucks bearing Georgia license plates. In light of this information, the authorities expected the trucks to depart shortly to pick up a load of marijuana. Therefore, a joint task force of United States Customs Air Officers and Louisiana State Police commenced a surveillance of the Dupuis residence in order to determine when the trucks would leave.
The rural residential area under police surveillance was a corner tract on which is located a house belonging to the defendant Jeff Dupuis, and a mobile home occupied by the defendant Bernis Davidson. This compound was bounded on the west by State Highway 349, on the north by a parish road, and on the east and south by fields of sugar cane. Between the sugar cane field and the house ran a shell road.
Until 7:30 p. m., the officers' activities consisted of simply a roving surveillance on the public roads. At 7:30 p. m., two officers proceeded by foot from the parish road on the north side of the property through the sugar cane field to a point south of the Dupuis yard. About 11:00 p. m., the officers noticed that the three trucks parked on the private road between the residence and the fields were being maneuvered for some loading operation. When the rear doors of the trailer were opened, one of the officers, through the use of night viewing equipment, observed large bales of a substance he presumed to be marijuana because of the size and shape of the bales. Later, when the first bobtail truck moved from the back of the trailer, the interior light of the truck allowed the officers to see the bales with their unaided eyes. At this point, the officers attempted to obtain a telephone search warrant. After obtaining the warrant, the officers moved in and arrested the defendants and seized the trucks and their contents.
The state has stipulated that the warrant obtained by the officers is invalid since the requirements for a telephone search warrant had not been met. Based upon these facts, the trial court denied the defendants' motion to suppress. The defendants have urged that the original trespass onto their property (the sugar cane fields) for the purpose of observing their activities violated their Fourth Amendment right to privacy. In Katz v. U. S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court abandoned the notion that the Fourth Amendment protection was implemented in certain "constitutionally protected areas". The courts will *937 now look to the defendant's reasonable expectation of privacy in determining whether the Fourth Amendment applies. In determining whether one has a reasonable expectation of privacy, the test is not only whether the person had an actual or subjective expectation of privacy but also whether their expectation of privacy is of the type which society at large is prepared to recognize as being reasonable. State v. Wilbourn, 364 So.2d 995 (La.1978). In applying the test, it has been held that a search and seizure conducted on the private land of defendant for marijuana violated the Fourth Amendment where the marijuana was not visible from the public road and the private road was posted and a chain barred access to the private road. State v. Byers, 359 So.2d 84 (La.1978).
In State v. Fearn, 345 So.2d 468 (La. 1977), the court found that the defendant had a reasonable, although not justified, expectation of privacy because his marijuana plants could not be seen from his parents' house. For this reason, the seizure was held invalid. However, the court noted that the initial viewing of the plants from the neighbor's yard by the police was not an intrusion since the plants were clearly visible from this point.
In examining the reasonableness of the defendant's expectation of privacy, the distinction between open fields and curtilage may be helpful. The Fifth Circuit has held that the search of open fields surrounding a house is not protected under the Fourth Amendment since there is no reasonable expectation of privacy. U. S. v. Brown, 473 F.2d 952 (5th Cir. 1973). Thus, in U. S. v. Williams, 581 F.2d 451 (5th Cir. 1978), the Fifth Circuit upheld the seizure of moonshine from the defendant's shed where officers had detected the odor of mash while standing outside the curtilage of defendant's home despite the fact that they had trespassed onto his property.
In the instant case, the field from which the defendants' operations were observed was leased to others for agricultural purposes. Thus, the field, like the neighbor's yard in Fearn, was not exclusively in the control of the defendant. There were no signs, fences or gates to exclude the public as in Byers from the area. In fact, any stranger could have driven down the shell road or been in the field and observed the defendants' loading activities.
As in Williams, the police's observations were made from a field outside the curtilage of the Dupuis home. Although the officers were trespassing, the defendants had no reasonable expectation of privacy as to this field. Of course, the use of extrasensory means of probing does increase the extent of an intrusion. The problem created by the use of night viewing equipment is pretermitted here since the police officer testified that he was able to clearly discern the characteristic wrappings of bales of marijuana with his unaided eyes as the bobtail truck pulled off. Therefore, we conclude that the initial sighting of the marijuana by the officers from the sugar cane field did not violate the Fourth Amendment since the defendants had no reasonable expectation that their activities would remain private.
The state has conceded that the telephone search warrant is invalid. Therefore, the seizure of the trucks and their contents must be justified as a warrantless seizure. The rule is well established that warrantless searches and seizures are unreasonable unless they fit within one of the limited number of well-delineated exceptions to the warrant requirement. State v. Guzman, 362 So.2d 744 (La.1978); State v. Daigre, 364 So.2d 902 (La.1978).
One of these exceptions to the warrant requirement is the so-called "automobile exception". This exception is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. State v. Spencer, 374 So.2d 1195 (La.1979).
In determining whether the officers had probable cause to seize the marijuana, we must determine if under the facts and circumstances known to the police at the time of the seizure, a reasonable person *938 would conclude that contraband was present. In this case, officers received information from various criminal intelligence sources linking the defendants with persons suspected of narcotics trafficking in Georgia. The officers observed three trucks being maneuvered in total darkness into a loading position. Further, from their position in the cane field, they saw what appeared to be bales of marijuana.
Although the sighting of the bales alone may have been sufficient to justify a belief that contraband was present, it should be noted that there were other underlying facts which supported the police's suspicions. Customs officials had discovered an abandoned plane in Georgia filled with marijuana and registered to Marvin Zylstra. The defendant, Jeff Dupuis, had rented a car in Alabama as Mr. Zylstra's agent. Further, officers discovered a refrigerated truck at the Dupuis residence which was registered to Mr. Zerbe, an associate of Mr. Zylstra. The officers testified that such refrigerated trucks are a common method of transporting marijuana. This information, although insufficient in itself to establish probable cause, was enough to arouse police suspicions. The subsequent arrival of trucks bearing Georgia license plates, the midnight loading activities and the sighting of the bales combined with the other information were sufficient facts and circumstances to constitute probable cause.
We also conclude that exigent circumstances existed. One of the bobtail trucks had already been unloaded into the refrigerated truck within 20 or 30 minutes. At this point, the officers tried to get the warrant. After another 20 minutes had passed, it was reasonable to conclude that the loading operations were almost complete and that the trucks would be leaving. Since the departure of the trucks was imminent, the officers were justified in moving in to arrest the defendants and seize the trucks without waiting to secure a warrant. See State v. Spencer, supra. The trial court properly denied the defendants' motion to suppress since the search and seizure did not violate the Fourth Amendment's protection against unreasonable searches and seizures.
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
DIXON, J., concurs.
NOTES
[*] Honorable Jesse N. Stone, Jr. served as Justice Ad Hoc in the vacancy created by the resignation of Tate, J.