CUTRER, Judge.
Defendant, Byron Harrington, was charged by bill of information with the possession of marijuana in violation of LSA-R.S. 40:966, and with possession of drug paraphernalia with intent to use, a violation of LSA-R.S. 40:1033(C). A motion to suppress the marijuana and paraphernalia obtained without a search warrant (in two separate seizures) was filed by defendant. After hearing the trial court granted the motion, suppressing all items seized in both seizures. From that ruling the State sought writs to this court seeking a reversal of the trial court ruling.
This court granted the writ and made it peremptory, in part, and denied it in part. In our summary disposition of the writ, we reversed and set aside the trial court ruling insofar as it suppressed the evidence that was seized as a result of the initial inquiry by the officer, which evidence was seized under the “plain view” doctrine. The writ application was denied as to the evidence seized as a result of the subsequent “inventory” search.
The Supreme Court subsequently granted writs, setting aside the ruling of this court and remanded the same to this court for briefing, argument and an opinion.
On remand, the State is not contesting the portion of the ruling of the trial court which suppressed the evidence seized as a result of the subsequent “inventory” search. The State limits its argument to the contention that the trial court erred in suppressing the evidence seized as a result of the initial inquiry by the officer. The State contends that the seizure was valid as it was made under the “plain view” doctrine.
FACTS
There is some conflict in the testimony, but we have concluded that the record establishes the following facts:
*396 On a Sunday afternoon in May 1982, defendant and two companions (one was a juvenile) were traveling in defendant’s Z-28 sportscar enroute from Kaplan, Louisiana, to Holly Beach in Cameron Parish. The defendants were proceedipg into the town of Cameron when Deputy Tommy Thompson of the Cameron Parish Sheriff’s Department, who was on patrol, noticed the Z-28 weaving as it proceeded along the highway. Deputy Thompson began following the Z-28 for about one-half mile. The erratic driving continued. Deputy Thompson, by use of his radio, began running a license check on the vehicle. Before he could get the results, the Z-28 pulled into the parking lot of a discount store. Defendant testified that he stopped at the store to purchase some food. The officer had not activated his lights or siren, nor had he given any other indication to defendant that he wanted him to stop.
As defendant stopped in the parking lot, the officer also stopped beside the Z-28. Defendant and the officer both got out of their vehicles and met near the Z-28.
Deputy Thompson saw several beer cans inside defendant’s car and asked the defendant for his driver’s license, read him his Miranda rights and asked him whether he had been drinking. Defendant admitted to the deputy that he had had “three or four beers.” The deputy, for the purpose of obtaining their identities, then approached defendant’s car where the two passengers were still seated. Also, he, understandably, wished a clear view of the other occupants in order to avoid the possibility of being injured.
The Z-28 had “T-tops” which were open at the time and, without entering the car, the officer saw in “plain view” a pipe containing residue and a clear plastic bag containing “green plant material” which was subsequently identified as marijuana. Another officer arriving shortly after defendant stopped his car and also saw the marijuana. The contraband items were laying openly on the floorboard of the car behind the driver’s seat. Upon cross-examination defendant conceded that the pipe and bag could be seen from outside the car itself; this apparently due to the design of the Z-28 and the absence of the “T-tops.”
After viewing the illegal items, Deputy Thompson formally arrested all three parties for the possession of marijuana and drug paraphernalia and read “their rights” to them. It appears that the marijuana and pipe were seized prior to the two passengers getting out of the car. Defendant was requested to sign a search and seizure form which he declined to do.
The vehicle was then impounded and towed into a custodial area whereupon Deputy Thompson again requested defendant to authorize a search and seizure of the car; this invitation was also refused. Following this refusal the officer conducted what he termed an “inventory” search of the vehicle. This yielded several “roaches” (parts of marijuana that had been smoked) from the ashtray and another pipe containing marijuana was found inside of a cassette tape case. We are not concerned with the seizure resulting from the “inventory” search.
The trial judge, in brief oral reasons granted the motion to suppress citing State v. Parker, 355 So.2d 900 (La.1978). The court stated as follows:

“THE COURT: Well, I recall the case of State versus Parker, and I haven’t had a chance to read Hernandez, but I always thought Parker was an unfortunate decision. But it does reflect prevailing interpretations. Without resolving or trying to resolve conflicts in testimony, the Court is going to conclude that the proper thing to have done in this case was to seek a search warrant, and there were no exigent circumstances involved. Failure to seek a search warrant renders the subsequent search and its fruits illicit. And so consequently, the motion to suppress is sustained.”

We find that State v. Parker is not applicable to the issue before us. In the instant case, the vehicle was not unattended, and there was an “immediate danger that the evidence would be destroyed.” The facts show that an exigency existed in this instance.
*397 THE VALIDITY OF THE INITIAL SEIZURE
Deputy Thompson was justified in following a vehicle weaving on a public highway. Moreover, the officer would have been justified in stopping the vehicle. LSA-C.Cr.P. art. 215.1. This did not happen, however, as the vehicle was voluntarily stopped by the defendant in a “public place” where the officer was entitled to be. When he viewed the numerous beer cans laying in the interior of the car, along with defendant’s erratic driving, Deputy Thompson had probable cause to arrest defendant for driving under the influence of alcohol. The test for probable cause is set forth in State v. Tomasetti, 381 So.2d 420, 423 (La. 1980):
“Probable cause exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Marks, supra [337 So.2d 1177 (La.1976) ]. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act.”
The officer testified that he read the defendant his Miranda rights after he saw the beer cans. It is apparent that defendant was under arrest at that time. The concept of restraint has been the focus in determining whether an arrest has occurred. The magical words “You’re under arrest,” are not required to affect an arrest, and the reading of defendant’s rights indicates a sufficient intent by Deputy Thompson to restrain defendant’s freedoms, as those rights only come into existence when an individual is in custody. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Upon restraining the driver of the vehicle, the officer was certainly justified in checking the I.D. of the two passengers.
The “T-tops” of the Z-28 were off. As the officer approached the vehicle to check the I.D. of the passengers, he had a clear view of the inside of the ear as he stood at its side. On the floorboard in the back seat lay a pipe that the officer recognized as drug paraphernalia. Alongside the pipe was its counterpart, a plastic bag containing leaf material which, to an experienced eye, appeared to be marijuana. The officer could see the contraband as it was clearly discernable to him as he stood by the open top car.
The Fourth Amendment and Article I § 5 protect only reasonable expectations of privacy. State v. Malone, 403 So.2d 1234 (1981). It is hard to visualize such a privacy expectation under the facts presented herein. The marijuana and pipe were not placed in an area to secure them from anyone’s eyesight.
In the case of State v. Gedric, 374 So.2d 1192 (La.1979), the officers in that case looked through the open door of the stopped vehicle and saw the marijuana in plain view on the floorboard of the car. The court stated the following:
“[I]t was not a search. The officer was looking into and seeing what was open exposed to view.... Once the door was open the marijuana was plainly visible and the marijuana was lawfully seized.... Discovery of the first bag of marijuana was in natural light. A search implies prying into something, a circumstance not present here.” (Citations omitted.)
These principles apply to the case at hand. The paraphernalia and marijuana were in plain view of the officer. The seizure of these items meets all the requirements of the “plain view” doctrine as set forth in State v. Hernandez, 410 So.2d 1381, 1383 (La.1982). These conditions are as follows:
“... (1) there must be a prior justification for an intrusion into a protected area; (2) in the course of which evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband.”
*398 For the reasons set forth, the writ is granted and made peremptory in part and denied in part. The judgment of the trial court on the motion to suppress filed by defendant is reversed and set aside insofar as the ruling suppressed the evidence that was seized as a result of the initial inquiry by the officer and which evidence was seized under the “plain view” doctrine. The application is hereby granted and the motion to suppress is denied insofar as this portion of the trial court judgment is concerned.
In all other respects, the writ application is denied. The case is remanded to the trial court for further proceedings in accordance with the views expressed herein and according to law.
WRIT GRANTED IN PART; DENIED IN PART; REMANDED.