560 So.2d 694 (1990)
STATE of Louisiana
v.
Leeroy John BROUSSARD, Jr.
No. CR 89-386.
Court of Appeal of Louisiana, Third Circuit.
April 18, 1990.
*695 Emile Carmouche, Crowley, for defendant-appellant.
Glenn Foreman and Robert Cline, Asst. Dist. Attys., Crowley, for plaintiff-appellee.
Before GUIDRY, DOUCET and KING, JJ.
GUIDRY, Judge.
The defendant, Leeroy John (Chubby) Broussard, Jr., was indicted by an Acadia Parish grand jury on March 30, 1987 for the February 28, 1987, first degree murder (La.R.S. 14:30) of his fifteen year old wife, Sheila Gallet Broussard. On December 2, 1988, after a four day trial, a twelve person jury returned a responsive verdict of guilty of second degree murder, a violation of La.R.S. 14:30.1. In accordance with that statute, the trial judge, on January 11, 1989, sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.
Defendant appeals his conviction and sentence specifying nine assignments of error of which assignments number 2, 3, 4, 6, 7 and 8 have not been argued and are, therefore, considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
In the late night hours of February 27 and/or the early morning hours of February 28, 1987, defendant became involved in an argument with family members over the volume of a stereo defendant was playing. As the next morning was a school day and defendant had younger brothers and sisters who were sleeping, his parents requested defendant lower the volume. Each time the senior Broussards made this request, defendant increased the volume. Finally, this verbal bickering escalated into a *696 physical altercation wherein defendant smashed some records and the stereo on the floor, shoved his mother and threw his father on the floor and straddled him in a threatening manner.
At this point, Shawn LaValley, who was living in the Broussard home and dating Samantha Broussard, defendant's sister, grabbed Chubby and tried to pull him off of his (defendant's) father. As Shawn attempted to restrain and calm Chubby, the senior Mrs. Broussard (Nola) gathered the occupants of the home and fled to the family automobile.
Once the family had exited the house, Shawn released Chubby and followed Nola, Sheila, Samantha and the two younger Broussard children to the car, intending to drive to a neighbor's home for safety. Chubby followed cursing and threatening to kill both Sheila and Shawn. Unfortunately, the car would not start and, as Chubby approached the vehicle, the occupants, fearing for their safety, locked the car doors. This further infuriated defendant and he grabbed an eighteen inch pipe wrench and began to beat on the car yelling, "I'm going to kill all you f......".
Defendant broke the windows on the passenger's side and proceeded around to the driver's side, denting the car and breaking the back driver's side window. As he attacked the driver's window, all the occupants except Shawn fled from the car to the house.
At trial Shawn testified that Chubby wouldn't let him out of the car, repeatedly stating he was going to kill him. When Chubby jumped on the hood of the car and began attacking the windshield with the pipe wrench, Shawn jumped from the car and started to run away from the house. LaValley stated that the defendant chased him up the driveway to the property line before abandoning pursuit. LaValley further stated that during the entire car attack incident, Leeroy, Sr., defendant's father, merely stood by and watched, apparently fearful of his own safety.
Shawn LaValley testified that after escaping the defendant's attack, he continued to run to the home of a neighbor, George Perry, some twenty minutes away. After awakening Perry, LaValley notified the Acadia Parish Sheriff's Department of the trouble at the Broussard home.
Meanwhile, the occupants of the car had taken refuge in the back bedroom of the Broussard home. At this point, the testimony is unclear. Either Sheila Broussard voluntarily went into the front room to try and talk to her husband or was forced into the front room by defendant. In any event, defendant began hitting the victim with his fists. Leeroy, Sr. yelled for his son to stop hitting his wife, but this only provoked defendant further. Chubby kicked in the rear bedroom door, the pipe wrench in one hand and a shiny object (later identified as a knife) in the other and threatened to kill his younger siblings.
Nola Broussard stated that as Chubby exited the rear bedroom he threw the wrench. On the night of the murder, she said he hit Sheila in the back with the throw. Later, she claimed it was Leeroy, Sr. who was struck. In any event, the incident in the rear bedroom so frightened the family that they fled out of a rear door to seek refuge in a field behind the house. As they exited the house, Leeroy, Sr., Nola and Samantha all saw the defendant kneeling over his wife, beating her. Nola testified that, as she ran out the back door, she heard Sheila yell, "Help me, Mr. Leeroy".
Leeroy, Sr. testified that, as they lay in the field hiding, Chubby came out of the back door, with the shiny object in his hand, looking for the family. As he searched, he said, "... son-of-a-bitch, I'm going to get you all".
When he was unable to find the family, Chubby returned to the house. The Broussards remained huddled in the rain, in the field, until they were able to identify police officers on the scene.
Deputies Danny Wimberly and Brandon Boudreaux answered LaValley's call to the Acadia Parish authorities. Upon their arrival at the Broussard home, the deputies observed the battered Broussard car, lights burning in the Broussard home, but no sign of anyone about. The deputies knocked on *697 the screened porch door and identified themselves. They received no response so they crossed the porch to a screened front door where once again they knocked and called out.
As Deputy Wimberly was attempting to establish contact with anyone within, he observed a great quantity of blood on the living room floor. Looking further, Wimberly was also able to observe a white female thrashing about in a pool of blood.
Deputy Wimberly immediately told Deputy Boudreaux to call for an ambulance and entered the residence to try and aid the victim. Upon entering, Deputy Wimberly was then able to see the defendant stretched out, face down on the sofa, apparently asleep. No one else was found in the house.
Louisiana State Police Trooper James Simon, a trained Emergency Medical Technician (EMT), who had heard the call for an ambulance, arrived within minutes to assist. His arrival was followed by an Acadian Ambulance unit. Neither the trooper nor the Acadian Ambulance EMT's were able to save the victim who died at the scene.
The autopsy established that the victim died from four severe blows to the left side of her head, two of which fractured (and punctured) her skull. The examination further revealed the victim had suffered nonlethal stab wounds to the head, face, neck and palm of the left hand. The coroner testified that the latter wounds would indicate the victim had been attempting to protect herself when they were inflicted.

ASSIGNMENT OF ERROR NO. 1
By his first assignment of error, defendant argues that the trial court erred in refusing to grant his motion to quash.
Initially, it should be noted that defendant's motion to quash was filed on November 28, 1988, the day prior to trial on the merits. The trial court declined to consider defendant's motion to quash inasmuch as the last day defendant had to file pre-trial motions was October 12, 1988. The trial judge was correct in his ruling unless the grounds for the motion fell under an exception outlined in La.C.Cr.P. art. 535. Defendant argues that La.C.Cr.P. art. 535(A)(1) is applicable. That article reads in pertinent part as follows:
"A. A motion to quash may be filed of right at any time before commencement of the trial, when based on the ground that:
(1) The offense charged is not punishable under a valid statute; ..."
In support of this contention defendant urges that the bill of indictment does not specify any aggravating circumstances which defendant was alleged to have done which made his conduct first degree murder. Further, defendant argues that this specification was necessary in light of the 1979 legislative amendment to La.R.S. 14:30 which added the requirements of an aggravating element as essential to constitute the charge of first degree murder.
We find no merit to defendant's argument. The Louisiana Supreme Court has stated:
"C.Cr.P. 465(A)(31) provides that the proper short form indictment for first degree murder is `A.B. committed first degree murder of C.D.' Section B provides that the short form indictment `may also include a statement of additional facts pertaining to the offense charged. If this is done it shall not affect the sufficiency of the specific indictment form authorized by this article.'"
State v. Neslo, 433 So.2d 73 (La.1983), at 81, 82.
In State v. Kohler, 434 So.2d 1110 (La. App. 1st Cir.1983), our brethren of the First Circuit, with whom we agree, stated:
"Our constitution provides that an accused shall be informed of the "nature and cause" of the accusation against him. La. Const. of 1974, art. I, § 13. This constitutional provision is given force and effect by La.C.Cr.P. art. 464 which provides in part:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. *698 La.C.Cr.P. art. 465 authorizes the use of specific short form indictments in charging certain offenses, including first degree murder. The constitutionality of this short form scheme has been consistently upheld and will not be questioned here. State v. Baylis, 388 So.2d 713 (La.1980); State v. Liner, 373 So.2d 121 (La.1979). As stated in the comments to article 465 of the Code of Criminal Procedure:
The basic function of the specific indictment forms is to inform the accused of the crime charged, reserving a recital of the details of the offense for the bill of particulars, which is not subject to the same rules of strict construction as the indictment. This precludes use of the indictment as a vehicle for a battle of wits between the draftsman and a defense counsel who seeks to checkmate the state by reason of some inadvertent and often highly technical omission."
The record reflects that the indictment under which defendant was charged was filed March 30, 1987. It recites that defendant did commit first degree murder of Sheila G. Broussard, in violation of the provisions of La.R.S. 14:30. This indictment is in conformity with La.C.Cr.P. art. 465(A)(31). Furthermore, on September 23, 1988, the defendant filed a motion for bill of particulars, discovery and disclosure. This thirty-seven paragraph motion was extensively answered by the State, its answer being twenty-nine typed pages including the original offense report and supplemental reports of three officers.
Additionally, an objection to the sufficiency of the bill of particulars was filed and answered in open court on September 27, 1988.
Accordingly, defendant was specifically and exhaustively notified of every aspect of the offense charged. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error, defendant contends that it was reversible error for the court to have admitted into evidence any weapons or other objects found by the police while searching the residence or surrounding premises without first obtaining a search warrant.
This motion was also untimely filed, more than a month after the last day to file pre-trial motions and only hours before the trial was scheduled to begin. The trial court correctly refused to consider this motion. La.C.Cr.P. art. 521.
Even if this motion had been considered, we find the trial judge would have been correct in admitting the evidence which defendant sought to suppress.
The Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution protects people against unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983). This protection is based upon every person's right to privacy. Violation of a person's right to privacy requires the exclusion of evidence obtained in violation of a person's constitutional rights. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
A search conducted without a warrant issued upon probable cause is normally per se unreasonable, subject only to specifically established and well delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Raheem, 464 So.2d 293 (La.1985); State v. Church, 538 So.2d 993 (La.1989). The State bears the burden of proving that evidence seized pursuant to a warrantless search was taken under one of the exceptions. La.C.Cr.P. art. 703(D); State v. Daigre, 364 So.2d 902 (La.1978); State v. Franklin, 353 So.2d 1315 (La. 1977). Those expectations are in the most part based upon a person's diminished expectation of privacy. Where there is no reasonable expectation of privacy, the constitutional protection will not be extended. See State v. Harrington, 430 So.2d 394 (La.App. 3rd Cir., 1983), writ denied, 435 So.2d 433, rehearing denied, 437 So.2d 1136 (La.1983); State v. Freeman, 503 So.2d 501 *699 (La.App. 4th Cir.1987); and, State v. Byers, 359 So.2d 84 (La.1978).
In the instant case, none of the evidence sought to be introduced was obtained from within the Broussard home. The pipe wrench, determined to be the murder weapon, was discovered in the front yard of the Broussard home, approximately twelve feet from the house, next to a child's bicycle. The knife, identified as the shiny object carried by defendant the night of the murder, was found in a trash pipe, about forty feet to the rear of the residence near the field in which the Broussards hid. A person would normally not have any reasonable expectation of privacy in regard to articles left in either location.
The discovery of the wrench would definitely fall under the plain view exception. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Huston, 445 So.2d 67 (La.App. 2d Cir.1984). However, since the knife was discovered pursuant to a planned search, its discovery cannot be labeled "inadvertent", thus disqualifying it from the plain view exception.
However, we find the discovery of both objects fall under either one or both of two other exceptions to the exclusionary rule making both the wrench and the knife admissible. First, there is the exception of consent. Shawn LaValley, a resident of the Broussard home, summoned the police to the residence. As LaValley had joint dominion and control over the property, his permission was sufficient authority for the police to enter thereon. State v. Abram, 353 So.2d 1019 (La.1977), cert. denied, 441 U.S. 934, 99 S.Ct. 2058, 60 L.Ed.2d 663 (1979).
Even if La Valley's call was not sufficient to establish consent, we find that both objects are subject to the "open fields doctrine". That doctrine can be stated thuslyno violation of the right to privacy guaranteed by the Fourth Amendment to the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution occurs where there is a search of open fields without a search warrant even if officers commit a technical trespass upon the land. See U.S. v. Brown, 473 F.2d 952 (5th Cir.1973); State v. Magouirk, 539 So.2d 50 (La.App. 2d Cir.1988); and, State v. Dupuis, 378 So.2d 934 (La.1979). This assignment is also without merit.

ASSIGNMENT OF ERROR NO. 9
By this assignment, the defendant argues that the evidence presented by the State against him was not sufficient to support his conviction of second degree murder.
"An appellate court in Louisiana, reviewing the sufficiency of the evidence to support a conviction, is controlled by the standard enunciated by the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979). Under that standard, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
When the conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.4 State v. Sutton, 436 So.2d 471 (La.1983).
4La.R.S. 15:438 does not establish a separate standard of review. As stated by this court in State v. Chism, 436 So.2d 464, 470 (La.1983), La.R.S. 15:438 "may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, [but] it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence"."
State v. Jacobs, 504 So.2d 817 (La.1987).
Second degree murder is the killing of a human being when the offender has a *700 specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific criminal intent is a state of mind and, as such, it need not be proven as a fact, but it may be inferred from the circumstances present in the case and the actions of the defendant. State v. Volkmann, 539 So.2d 1279 (La.App. 3rd Cir.1989); State v. Romero, 533 So.2d 1264 (La.App. 3rd Cir. 1988).
In presenting its case against defendant, the State adduced testimony from eleven witnesses and introduced twenty-six exhibits. Among the witnesses were the parents of defendant, who were both on the scene when the initial confrontation started; an unrelated, independent member of the household, Shawn LaValley; the coroner who performed the autopsy; other medical personnel; and, several law enforcement personnel.
The testimony of all witnesses, which we previously summarized, as well as the numerous exhibits clearly established, beyond any reasonable doubt, that the defendant killed the victim and that he committed the act with the specific intent to do so.
In sum, we find that the evidence presented to the jury, viewed in the light most favorable to the prosecution, was not only sufficient to convince a rational trier of fact that all the elements of second degree murder had been proved beyond a reasonable doubt, but that the evidence was so overwhelming as to defy any other conclusion.
Accordingly, for the reasons stated, the defendant's conviction and the sentence imposed are affirmed.
AFFIRMED.