I2DALEY, Judge.
Defendant, Kevin Smith, was charged with illegal possession of stolen property valued at more than $500.00 in violation of LSA-R.S. 14:69. The defendant filed a motion to suppress evidence which the trial court denied. Following trial, the jury returned with a verdict of guilty as charged. On April 26, 1991, the trial court sentenced the defendant to three years at hard labor; however, the court suspended the sentence and placed the defendant on three years active probation subject to conditions. On June 22, 1994, the trial court granted defendant an out-of-time appeal. On appeal, defendant contends the trial court erred in the denial of his motion to suppress evidence and that the evidence produced at trial was insufficient to support his conviction of possession of stolen property valued at more than $500.00. For the reasons that follow, we affirm.
I ¾At approximately 3:20 a.m. on January 31, 1990, Deputy Constantini of the St. Charles Parish Sheriffs Office was traveling east on River Road patrolling the Montz area of the parish. As he approached the east side of LP & L’s “Little Gypsy” plant, he observed a blue vehicle traveling south on Union Lane which then turned in front of his vehicle eastbound on River Road. There were several large objects protruding from the vehicle’s open trunk. Deputy Constanti-ni reduced his speed and followed the slow-moving vehicle. When the vehicle turned left onto Kenner Lane, Deputy Constantini observed a hand emerge from the passenger side of the vehicle and it appeared that they were waiving to him. Deputy Constantini continued eastbound on River Road and observed in his rear-view mirror that the vehicle had stopped and turned its lights off. Deputy Constantini then proceeded a short distance to a shell road and returned on the top of the levee. He parked directly across from Kenner Lane where he could observe the vehicle.
From his position on top of the levee, Deputy Constantini observed that the vehicle was parked in the middle of the street. However, he did not see anyone inside the vehicle. After requesting a back-up unit, Deputy Constantini observed a subject, later identified as the defendant, approach the vehicle, look in the trunk and under the hood, then enter the vehicle and drive-off down Kenner Lane.
Shortly thereafter, Deputy Constantini met his back-up at the intersection of River Road and Kenner Lane and the two officers proceeded down Kenner Lane looking for the vehicle. When the officers reached the address of 172 Kenner Lane, they located the vehicle which was “backed in” | .¡between the residence’s unenclosed carport and a mobile home[1] in an open grassy area approximately 15 to 20 feet from the road.
Upon exiting their units, the officers entered the yard to look for any individuals and to obtain the license plate number to “run” a registration check on the vehicle. As the officers walked to the rear of the vehicle, they looked inside and observed six objects which “looked like some type of copper or brass, electrical items” on the back seat. The officers then observed four very large objects protruding from the trunk which looked like industrial electrical switches. Two more of the same objects were found on the ground behind the vehicle. After obtaining the license plate number, the officers returned to their units and requested headquarters to “run” a registration check on the vehicle. The officers also requested headquarters to contact LP & L and instruct them to send a representative to the scene in order to determine if the objects were the property of LP & L. Two employees of LP & L eventually arrived on the scene and *97 identified all of the objects as equipment which belonged to LP & L.
Subsequently, headquarters advised the officers that the registered owner of the vehicle was Joseph Smith, the defendant’s father, and he resided at 172 Kenner Lane. The officers knocked on his door and Smith answered it. In response to their questioning, Smith informed the officers that his son, the defendant, had been using his vehicle. When the officers inquired about the defendant’s presence, Mr. Smith stated that he would locate him and he left the scene. Within 15 minutes, Mr. Smith returned with the defendant. The officers advised him of his rights and questioned him regarding the objects in Ighis vehicle. The defendant responded that he found the objects on his property. The property is located on the west side of LP & L.
Thereafter, Deputy Constantini contacted headquarters and requested a detective and a crime scene technician. When Detective Jackson and Technician Grabert arrived on the scene, Deputy Constantini walked back toward the vehicle to check for additional items and underneath the carport he found two pairs of boots and two pairs of coveralls which were freshly soiled with mud.
Meanwhile, Detective Jackson obtained a written consent to search from Mr. Smith and the defendant later gave a written statement to Detective Jackson indicating that he found the objects in the cemetery at the end of Union Lane. Based on the evidence gathered, defendant was arrested and charged with possession of stolen property in excess of $500.00.
Following ■ his conviction, defendant was granted an out-of-time appeal and asserts the trial court erred in denying his motion to suppress evidence and that the evidence presented at trial was insufficient to convict him of possession of stolen property in excess of $500.00.
Concerning the Motion to Suppress, defendant maintains he had a reasonable expectation of privacy which was breached by the officers when they entered the property without a warrant to observe the vehicle parked between his father’s house and his trailer. The test for determining whether the defendant has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but whether that expectation is of a type which society at large is prepared to recognize as reasonable. State v. Ragsdale, 381 So.2d 492 (La.1980).
|r,In State v. Dupuis, 378 So.2d 934, 937 (La.1979), cert. dismissed, Grassi v. Louisiana, 446 U.S. 993, 100 S.Ct. 2980, 64 L.Ed.2d 850 (1980), cert. denied, Green v. Louisiana, 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980), cert. denied, 449 U.S. 828, 101 S.Ct. 94, 66 L.Ed.2d 32 (1980), the Louisiana Supreme Court stated:
In examining the reasonableness of the defendant’s expectation of privacy, the distinction between open fields and curtilage may be helpful. The Fifth Circuit has held that the search of open fields surrounding a house is not protected under the Fourth Amendment since there is no reasonable expectation of privacy. U.S. v. Brown, 473 F.2d 952 (5th Cir.1973)....
In State v. Broussard, 560 So.2d 694, 699 (La.App. 3rd Cir.1990), writ denied, 566 So.2d 981 (La.1990), the Court stated the following regarding the open field doctrine:
... That doctrine can be stated thusly — no violation of the right to privacy guaranteed by the Fourth Amendment to the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution occurs where there is a search of open fields without a search warrant even if officers commit a technical trespass upon the land. See U.S. v. Brown, 473 F.2d 952 (5th Cir.1973); State v. Magouirk, 539 So.2d 50 (La.App.2d Cir.1988); and State v. Dupuis, 378 So.2d 934 (La.1979).
An open field need be neither “open” or a “field” as those terms are used in common speech. The term “open field” may include any unoccupied or undeveloped area outside of the curtilage. State v. Brown, 598 So.2d 565 (La.App. 4th Cir.1992)
In the instant case it does not appear that the defendant’s reasonable expectation of privacy was offended by the officers’ entry into the yard. Upon entering the area, the offi *98 cers observed the heavy metal objects on the back seat, protruding from the trunk and on the ground behind the car. The vehicle was parked in an open grassy area approximately 15-20 feet from the road. It [7was located between a carport and a mobile home and was visible from the road. The area was not surrounded by a fence.
This case is similar to the circumstances in State v. Wilbourn, 364 So.2d 995 (La.1978). There, the Louisiana Supreme Court found that the defendant’s reasonable expectation of privacy was not offended by the officers’ entry into an enclosed carport to look at the front of a vehicle suspected of being involved in a hit and run accident. Similarly, we find this defendant’s reasonable expectation of privacy was not offended by the officers’ entry unto his father’s property. Thus, we find the trial court did not err in denying defendant’s motion to suppress evidence.
Concerning the sufficiency of the evidence, defendant contends the value of the metal was not sufficiently proven. In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of eveiy element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. DiLosa, 529 So.2d 14 (La.App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989).
Because value is an essential element of the crime charged, the state must present evidence of the value of the stolen property at the time of the theft. State v. Hoskin, 605 So.2d 650 (La.App. 4th Cir.1992).
At trial Walter “Terry” Pond, the senior corporate security agent for LP & L, testified regarding the value of the stolen property. He stated that there were portions of six “115 KVA switches” located in the vehicle and yard |8which contained copper and brass and he estimated that those items weighed between 700 and 800 pounds. He noted that in the course of his employment he deals with scrap yards and the “value of metals” and estimated the “scrap value” of the items to be “around $700 if the market is up.”
Additionally, Mr. Pond testified that the “115 KVA switches” were temporarily placed in their storage yard because they were going to be used on another project in Kent-wood, Louisiana; thus they were not “scrap items.” He stated that the switches are engineered and manufactured as a unit and that a complete switch unit costs $6,000.00 to replace. Defendant was in possession of portions of six switches.
Considering the testimony of Ponds in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the stolen property was valued in excess of $500.00 at the time of the theft. Thus, this assignment of error has no merit.'
We have reviewed the record for errors patent and find none.
For the foregoing reasons, we affirm the conviction of Kevin Smith for illegal possession of stolen property valued at more than $500.00.
AFFIRMED.

. At trial, the defendant testified that he owns the mobile home.