714 So.2d 143 (1998)
STATE of Louisiana, Plaintiff-Appellee,
v.
Ronald D. TAYLOR, Defendant-Appellant.
No. 30531-KA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1998.
*145 Paula C. Marx, Lafayette, Louisiana Appellate Project, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Don M. Burkett, District Attorney, Clifford Royce Strider, III, and Anna L. Garcie, Assistant District Attorneys, for Plaintiff-Appellee.
Before NORRIS, STEWART and GASKINS, JJ.
NORRIS, Judge.
The defendant, Ronald D. Taylor, entered a Crosby[1] plea to production[2] of marijuana in contravention of La. R.S. 40:966 A after the District Court denied his motion to suppress. Subsequently, Taylor was sentenced to serve five years at hard labor. Taylor now appeals arguing that the trial court erred in (1) denying his motion to suppress, (2) failing to comply with the sentencing requirements of La.C.Cr.P. art. 894.1, and (3) imposing an excessive sentence. For the following reasons, we affirm.

I.
Taylor, along with two other individuals, occupied a house on Charlie Jones Road, one mile from U.S. 84, in DeSoto Parish. A confidential reliable informant told the DeSoto Parish Sheriff's Office ("DPSO") that one of the house residents was cultivating a marijuana patch across the road from the house; the CRI had routinely seen marijuana in the home. Lieutenant Robert J. Davidson of the DPSO put this information into an affidavit and a search warrant was issued covering:
A white frame house, located one mile off of U.S. 84 on the Charlie Jones Road. A green and white truck.

*146 All vehicles on premises, all persons present and their personal belongings, all storage, garage, outbuildings and locked containers and curtilage, in or above the ground, all located in DeSoto Parish, Louisiana.
Although the affidavit described the property across the road from the defendant's house, the warrant did not. Furthermore, the warrant did not expressly include the affidavit by reference.
At least six DPSO deputies executed the search warrant, including Deputy Horace Womack and Deputy Pat Cobbs. At the hearing on the motion to suppress, Deputy Womack testified that he found small quantities of marijuana and drug paraphernalia inside the house.
However, Deputy Cobb made a more significant find. He testified that after the residence had been entered, he commenced a search for marijuana plants. Specifically, he crossed the Charlie Jones Road, a parish road, and walked through a pasture and into the woods and found a "cattle trail" therein. Deputy Cobb followed this trail which led to a marijuana patch containing 59 plants. The patch was contained in the wooded area and could not be seen either from the parish road or from the residence. Furthermore, Deputy Cobb had to cross a fence at the road to get into the field and another fence while in the woods, although the latter fence was in disrepair requiring the deputy only to step over a strand of rusted wire. Deputy Cobb admitted he did know who owned the property that he had searched.
Taylor subsequently admitted that the marijuana patch was his and he was charged with production of marijuana. Taylor filed a motion to suppress the seized evidence alleging generically that the evidence was illegally obtained. After the hearing, the court denied the motion. Taylor subsequently pled guilty, reserving his right to appeal the motion to suppress.

II.
The first assignment of error urges that the District Court erred in denying the motion to suppress the evidence. Taylor argues that the evidence of the marijuana plants should have been suppressed because the search warrant did not particularly describe the place that was searched where the marijuana plants were discovered. The State counters by arguing that the place where the plants were growing was described with sufficient particularity in the affidavit to support the search warrant. We pretermit discussion as to whether the warrant was executed properly because we find that the warrant requirement is not applicable.
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. CONST. AMEND. IV.[3]
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
La. CONST. ART. 1, § 5. (emphasis added).
Both constitutional provisions protect only reasonable expectations of privacy. State v. Nicholson, 95-2526 (La.App. 4th Cir. 2/15/96), 669 So.2d 1280. If there is no reasonable expectation of privacy in the matter sought to be protected, then the constitutional provisions are not applicable. Capital City Press v. East Baton Rouge Parish Metro. Council, 96-1979 (La.7/1/97), 696 So.2d 562; Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). In other *147 words, compliance with the Fourth Amendment and Article 1, § 5, i.e. warrant or exceptions thereto, becomes immaterial.
The test for determining whether one has a reasonable expectation of privacy which is constitutionally protected "is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable." Capital City Press, supra, quoting State v. Harper, 27, 278 (La.App.2d Cir. 8/23/95), 660 So.2d 537, writ denied 95-2318 (La.1/12/96), 666 So.2d 320.
The United States Supreme Court has announced "that an individual may not legitimately demand privacy for activities conducted out of doors in fields."[4]Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).
Admittedly, such a bright-line rule might not apply with equal vigor under the Louisiana Constitution. See State v. Stokes, 516 So.2d 129 (concurring in writ denial, JJ., Marcus and Cole); but cf. State v. Church, infra, (J. Cole dissenting); see also John Devlin and David Hilburn, Louisiana Constitutional Law, 52 La. L.Rev. 575, 591 (1992). While reasonable expectations of privacy analysis remains the same under both constitutions,[5] the limitations upon the actor conducting the search, seizure, or invasion of privacy are greater under the Louisiana Constitution. State v. Church, 538 So.2d 993 (La.1989), citing State v. Hernandez, 410 So.2d 1381 (La.1982). However, we make this point only to be precise in light of recent jurisprudence, not as a basis for our holding today.
Although the effect of the "open fields" doctrine, as enunciated in Oliver, supra, may not be applied in all cases to evade the applicability of Art. 1,§ 5, the doctrine itself has been accepted into our jurisprudence. State v. Dupuis, 378 So.2d 934, 937 (La.1979), cert. dismissed, Grassi v. Louisiana, 446 U.S. 993, 100 S.Ct. 2980, 64 L.Ed.2d 850 (1980), cert. denied, Green v. Louisiana, 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980).
Certain areas outside the home, such as open fields, are entitled to less constitutional protection because they are more exposed to public view than areas such as a home. State v. Brown, 395 So.2d 1301 (La.1981); State v. Green, 96-208 (La.App. 3d Cir. 11/06/96), 683 So.2d 1292, 1298, writ denied, 96-2892 (La.6/13/97), 695 So.2d 963; State v. Smith, 94-901 (La.App. 5th Cir. 8/28/96), 680 So.2d 95, 97; State v. Brown, 598 So.2d 565, 571-72 (La.App. 4th Cir.1992), writ denied, 605 So.2d 1092 (La.1992); State v. Broussard, 560 So.2d 694, 699 (La.App. 3d Cir.1990), writ denied, 566 So.2d 981 (La. 1990); State v. Magouirk, 539 So.2d 50, 63 (La.App. 2d Cir.1988).[6] Therefore, determining the classification of the area in question, as either a home including curtilage, or an open field, becomes important.
A number of factors determine whether a given location is an open field. In United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the court listed four factors:
(1) the proximity of the area claimed to be curtilage to the home,
(2) whether the area is included within an enclosure surrounding the home,
(3) the nature of the uses to which the area is put, and
(4) the steps taken by the resident to protect the area from observation by people passing by.
Additionally, "[t]he term `open fields' may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither `open' or a `field' *148 as those terms are used in common speech. For example, ... a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment." Oliver, supra; State v. Brown, 598 So.2d 565 (La.App. 4th Cir.1992), quoting Oliver, supra.
In Dupuis, supra, the courtperhaps anticipating Oliver, supra-indicated that a warrantless search of an open area may be constitutionally permissible even when police are trespassing. The court in Dupuis noted that the defendants had taken no measures-such as signs, fences or gates-to protect their illegal conduct from public view.
The marijuana patch in the case sub judice was found on land Taylor did not claim to own or lease, and belonged to an unspecified party. Persons do not have a reasonable expectation of privacy in placing illegal contraband onto the property of others. State v. Harper, 27, 278 (La.App.2d Cir. 8/23/95), 660 So.2d 537, writ denied 95-2318 (La.1/20/96), 666 So.2d 320. However, under the facts of this case, the ownership of the property is irrelevant to the reasonableness of the defendant's expectation of privacy.
Although not observable from the road, the marijuana patch was at the terminus of an obvious trail which began across the road from Taylor's home. The entrance to this "cattle" trail was guarded by a single strand of wire on a broken-down fence. Judging from the testimony of the deputies who were involved in the search, the location bore essentially no indicia that its owner intended the site to be private-there was no testimony about a gate or a "No Trespassing" sign. It was some distance from the defendant's home and not associated with the home in any way.
Even where a site is shielded from view by terrain or foliage, it is nevertheless unreasonable for a citizen to expect privacy in an area where he has taken few affirmative steps to prevent others from observing the site. Moreover, the niceties of the law of trespass should not govern this issue. Dupuis, supra. Rather, the totality of the circumstances should be examined to determine whether a particular location is one of the relatively rare instances where officers will need to obtain a search warrant to search an open field.
The facts recited at the hearing on the motion to suppress and described above demonstrate that the defendant had no reasonable expectation of privacy in this patch of marijuana. There was essentially nothing to prevent anyone from walking down the path and discovering the contraband. Accordingly, officers needed no warrant to search this area, and the trial court did not err in denying the defendant's motion to suppress.

III.
Taylor's last two assignments of error urge that the trial court failed to adequately comply with the sentencing requirements of La. C.Cr.P. art. 894.1 and imposed an excessive sentence. Taylor's motion to reconsider on these same grounds was denied.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La. 1983); State v. Anderson, 30, 306 (La.App.2d Cir. 1/21/98), 706 So.2d 598, 1998 WL 18026. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court complied with La.C.Cr.P. art. 894.1. State v. Spencer, 29, 993 (La. App.2d Cir. 1/21/98), 707 So.2d 96. The record must show that the trial court complied with article 894.1, although it is not necessary that the trial court list every aggravating and mitigating factor. State v. Delaughter, 29, 974 (La.App.2d Cir. 12/10/97), 703 So.2d 1364. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Spencer, supra. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with article 894.1. State v. Turks, 30, 333 (La.App.2d Cir. 1/22/98), 706 So.2d 1042.
*149 Taylor does not support his claim of article 894.1 noncompliance with any circumstances that would affect his sentence, even though his attorney received the pre-sentence investigation report ("PSI") prior to sentencing. Before imposing sentence, the trial court inquired as to Taylor's age and noted on the record that he had ordered, received and reviewed the PSI.
The PSI is surprisingly thorough. It details Taylor's upbringing as one of six children, his progress through the 11th school grade, and his tenuous employment with a general contractor. Taylor is unmarried but has lived with the same woman for quite some time. Additionally, the court noted that Taylor was a second felony offender and currently on supervised probation for committing the same offense in Florida. Although the court did not recite the details of Taylor's social, educational and work history on the record, in this case the court's reference to the PSI is adequate. No part of the histories in the PSI is remarkable, and there are no peculiar aggravating or mitigating factors outside of Taylor's criminal history.
Taylor was then sentenced to five years at hard labor, credit for time served, and concurrent with any other sentence. Under La. R.S. 40:966 B(2), production of marijuana carries a term of imprisonment at hard labor for not less than five years nor more than 30 years and a fine of not more than $50,000. Although the sentencing colloquy was not expansive, it is in substantial compliance with article 894.1 in this case. See also State v. Spencer, supra.
We must next determine whether the sentence imposed is too severe given the circumstances of the case and the defendant's background. State v. Downs, 30, 348 (La.App.2d Cir. 1/21/98), 705 So.2d 1277. If the sentence is a needless imposition of pain and suffering and is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, the sentence is considered unconstitutionally excessive as violative of La. Const. Art. 1, § 20; State v. Downs, supra. However, a minimum sentence compelled by Louisiana law is presumed not to be excessive. State v. Juarez, 624 So.2d 26 (La.App. 2d Cir.1993).
In the instant case, there is nothing to show that imposition of the minimum sentence was excessive. Moreover, the trial court's decision not to suspend any part of the sentence is adequately supported and does not shock our sense of consciousness. As noted above, Taylor was currently on probation for the same offense in Florida. Having been convicted and shown leniency, he elected to repeat the same behavior for which he was punished initially. This is strong evidence that Taylor would persist in his criminal conduct if a probated sentence were imposed. The quantity of the marijuana plants did not suggest that the plants were for personal consumption. Therefore, the imposition of the minimum sentence of five years at hard labor, given the fact that he was currently on probation for the same offense, was not excessive.

IV.
Upon review of the record, we note that the District Court informed Taylor that he had "three years to apply for post-conviction relief [PCR]." (R.p.55) La.C.Cr.P. art. 930.8 provides that the prescriptive period for applying for PCR commences from the finality of defendant's conviction and sentence. This defect has no bearing on the sentence and is not grounds for remand. La.C.Cr.P. art. 921. The District Court is directed to give appropriate written notice of the prescriptive period for PCR within 10 days of the rendition of this opinion and to file Taylor's receipt of such notice in the record. State v. Lindsey, 28, 016 (La.App.2d Cir. 4/3/96), 671 So.2d 1155, and citations therein.

V.
For the above reasons, Ronald D.Taylor's conviction and sentence is affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] While a plea of guilty generally waives all non-jurisdictional defects in the pre-plea proceedings, a defendant may condition his plea, subject to acceptance by the trial court, upon the reservation for appellate review of specified pre-plea errors. State v. Thomas, 28, 790 (La.App.2d Cir. 10/30/96), 683 So.2d 1272, writ denied 96-2844 (La.4/25/97), 692 So.2d 1081; State v. Crosby, 338 So.2d 584 (La.1976).
[2] The bill of information charged Taylor with cultivating marijuana. (R.p.12). Under La. R.S. 40:966 A(1), the term "production" is expressly used to define the substance of the crime-the term "cultivation" is absent. However, La. R.S. 40:961(34) states that the term "production" has the same meaning as cultivation. See State v. Browning, 475 So.2d 90, 95 (La.App. 2d Cir. 1985), reversed on other grounds 483 So.2d 1008 (1986).
[3] The Fourth Amendment of the U.S. Constitution is made applicable to the states in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
[4] In Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the court first announced the "open field" doctrine and stated that the protections afforded under the Fourth Amendment do not apply to open fields. Practically, this broad holding has not meant that "anything goes" in an open field. Wayne R. LaFave, Search and Seizure, § 2.4(a) (3d ed.1996).
[5] Gannett River States Pub. v. Hussey, 557 So.2d 1154 (La.App. 2d Cir.1990).
[6] We note that some courts have treated the Fourth Amendment and Art. 1, § 5 of the Louisiana Constitution as affording a mutuality of protections in this context. See, State v. Broussard, supra; State v. Smith, supra; State v. Green, supra.