596 So.2d 323 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael Joseph JACK, Defendant-Appellant.
No. CR91-498.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
Writ Denied June 5, 1992.
*324 G. Paul Marx, Lafayette, for defendant-appellant.
Michael Harson, Asst. Dist. Atty., Dist. Atty's Office, Lafayette, for plaintiff-appellee.
Before DOUCET and KNOLL, JJ., and HOOD, J. Pro Tem.[*]
KNOLL, Judge.
Defendant, Michael Joseph Jack, appeals his conviction of second-degree murder, a violation of LSA-R.S. 14:30.1, for the July 30, 1987, killing of William Fusilier. For the following reasons, we affirm defendant's conviction finding no error by the trial court.

FACTS
On July 30, 1987, the victim, William Fusilier, his girl friend, Patricia Lynn Miller, and Patricia's family went out for the evening in Lafayette. After seeing a movie and eating dinner, they proceeded to the victim's home. As the family car stopped in front of the victim's home, defendant walked up to the passenger side of the automobile and asked if the victim was inside. As they answered "yes", defendant shouted "I'm a fag and I'm the one William's been sleeping with". As the victim exited the automobile, defendant followed him to the rear of the car. Immediately after the victim said "Look, I don't want any trouble.", defendant drew a .22 caliber handgun from a paperbag and fired four shots at the victim. Hearing the shots, Patricia's father, Alfred Edwards, accelerated the automobile away from the scene of the shooting. Upon arriving at home, Edwards reported the shooting to the police.
Arriving at the scene at approximately 10:30 p.m., Officer Dale Patton of the Lafayette City Police found the victim inside his home lying face down in a pool of blood. Officer Patton administered first aid until an ambulance arrived at the scene. The victim later died. Based on information received at the crime scene, defendant became a suspect. Later that evening at *325 police headquarters Alfred Edwards, Merriam Edwards (Alfred's wife), and Patricia identified defendant in a photographic line-up. Despite an extensive manhunt by police, defendant was not arrested until approximately one year after the shooting.
Defendant was found guilty as charged of second-degree murder, a violation of LSA-R.S. 14:30.1, by an 11-1 jury verdict and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Defendant appeals his conviction contending: 1) that the trial court erred in failing to give his requested jury charge on provocation; and 2) the jury verdict is contrary to the law and evidence.
JURY INSTRUCTION ON ADULTERY
In his first assignment of error, defendant avers that the trial court erroneously omitted a significant part of his requested jury instruction. Defendant contends that neither the general jury charge nor the special charge as given adequately advised the jury that adultery may be adequate provocation to support a conviction of manslaughter rather than second-degree murder.
LSA-C.Cr.P. Art. 807 provides:
"Art. 807. Special written charges
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
Requested special charges must be supported by evidence presented at trial. State v. Fluker, 454 So.2d 358 (La.App. 4th Cir.1984).
In the case sub judice, the trial court charged the jury as follows:
"BY THE COURT:
The defendant is charged with the second degree murder of William Fuselier, Jr.
Second-degree murder is the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm.
Thus, in order to convict the defendant of second degree murder, you must find:
(1) That the defendant killed William Fuselier, Jr., and
(2) That the defendant acted with specific intent to kill or to inflict great bodily harm.
In order to convict the defendant of the offense charged, the State must prove beyond a reasonable doubt every element of second degree murder.
Now if you are not convinced that the defendant is guilty of the offense charged, you may find the defendant is guilty of a lesser offense, if you are convinced beyond a reasonable doubt that the defendant is guilty of a lesser offense.
The responsive lesser offense for second degree murder is manslaughter.
Manslaughter is the killing of a human being when the defendant has the specific intent to kill or inflict great bodily harm, but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if you find that the defendant's blood had actually cooled or that an average person's blood would have cooled at the time the offense was committed.
The law does not define exactly what provocation is sufficient to reduce the homicide to manslaughter. Provocation is not limited to the threat of imminent death at the hands of the victim, but the law requires that there be some act or series of acts by the victim sufficient to deprive a reasonable person of cool reflection.

*326 Thus, in order to convict the defendant of manslaughter, you must find:
(1) That the defendant killed William Fuselier, Jr., and
(2) That the defendant had a specific intent to kill or inflict great bodily harm.
(3) That the killing was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection, and
(4) That the defendant's blood had not actually cooled or that an average persons' [sic] blood would not have cooled at the time the offense was committed."
The trial court, reasoning that a part of defendant's requested jury instruction on provocation was already included in the general charge, omitted the following sentence:
"Adultery, bodily harm, threats and any other action of the victim may be considered by the jury."
We agree with the trial court's exclusion of the jury charge on adultery. Defendant presented no evidence at trial to suggest any adulterous relationship as provocation for the shooting. By definition, adultery is a "violation of the marriage bed; sexual intercourse between a married man and a woman not his wife, or between a married woman and a man not her husband." Webster's New Universal Unabridged Dictionary 27 (2nd ed. 1979). Neither the victim nor the defendant in this case was married and, therefore, adultery could not have been the provocation necessary to support a conviction of manslaughter.[1]

SUFFICIENCY OF THE EVIDENCE
Defendant contends the jury verdict is contrary to the law and evidence and the record supports only a conviction of manslaughter. In his brief, defendant avers that the victim's "sexual betrayal" enraged him such that his shooting was done in the heat of blood.
Second-degree murder is the killing of a human being where the offender has specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1.
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10. Specific criminal intent may be inferred from the circumstances present in the case and the actions of the defendant. State v. Broussard, 560 So.2d 694 (La.App. 3rd Cir.1990), writ denied, 566 So.2d 981 (La.1990). Aiming a firearm directly at a victim is indicative of intent to kill or inflict great bodily harm. State v. Maxey, 527 So.2d 551 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 868 (La.1989).
A claim of insufficient evidence is judged by whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Manslaughter is defined as:
"A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;" LSA-R.S. 14:31 A(1).
*327 Manslaughter is the killing of a human being under certain mitigating circumstances (heat of blood or sudden passion) which prevents the crime from being second-degree murder. State v. Batiste, 410 So.2d 1055 (La.1982). Once the jury finds the elements of second-degree murder then it has to determine whether the circumstances indicate that the crime was actually manslaughter. State v. Maddox, 522 So.2d 579 (La.App. 1st Cir.1988).
The standard on review is, viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986).
In the case sub judice, the record shows that defendant intentionally killed the victim. Alfred Edwards testified that defendant approached the car and calmly asked if the victim was inside the car. Once they answered "yes", defendant began shouting as the victim exited the car. Patricia, seated in the rear seat, heard the victim say that he did not want any trouble and then saw defendant pull a handgun, extend it toward the victim's chest and fire four times. She testified unequivocally that she saw no weapon on the victim, and that the victim collapsed upon being shot. Defendant then began running toward their accelerating car and fired one shot in their direction as her father turned down a side street. Merriam Edwards described the shooting in the same light. That same evening all three family members identified defendant in a photographic line-up.
Luis Remus, a pathologist performed the autopsy on the victim. Dr. Remus found four bullet entry wounds: one to the lower neck area; one to the sternum clavicular area; one to the chest area and one to the upper abdominal area. The cause of death was severe blood loss resulting from a perforation of the inferior vena cava (a major vein leading to the heart).
Viewing the evidence under the Jackson standard, we conclude that a rational trier of fact could have found the essential elements of the crime of second-degree murder beyond a reasonable doubt.
Moreover, we do not find that the record supports a reduction of his conviction to manslaughter. Defendant alludes to the victim's "sexual betrayal" as sufficient mitigating circumstances. However, by his own account, defendant learned of the victim's six-month relationship with Patricia earlier that same month and even had approached the Edwards family about their relationship between four to seven days before the shooting. Considering the circumstances of the case, and the number of times defendant shot the victim, we conclude that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the mitigating factors were not established by a preponderance of the evidence.
For the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[*] Judge Warren E. Hood, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] This court is not unmindful of the jurisprudence recognizing the concept of "homosexual adultery". See Bonura v. Bonura, 505 So.2d 143 (La.App. 4th Cir.1987), writ denied, 506 So.2d 113 (La.1987); Menge v. Menge, 491 So.2d 700 (La.App. 5th Cir.1986); Alphonso v. Alphonso, 422 So.2d 210 (La.App. 4th Cir.1982); Adams v. Adams, 357 So.2d 881 (La.App. 1st Cir.1978), writ denied, 359 So.2d 1309 (La.1978). In all of these cases, the prohibited activity occurred with a married person.