JiSULLIVAN, Judge.
Defendant, Ronald Reeves, was convicted of second degree murder, a violation of La. R.S. 14:30.1, and sentenced to life imprisonment at hard labor. He appeals, arguing that (1) the trial court erred in not suppressing a confession and statements that he made while in police custody and (2) the jury’s verdict is contrary to the law and evidence.
Facts
On November 2, 1994, a caretaker found the body of Arnold Keith Davis, a thirty-five year old black male, in the LeBleu Cemetery near Iowa, Louisiana. Davis had been shot once in the back of the head.
On November 3,1994, three of defendant’s friends, John White, Carl Tucker, and Joseph Smith, presented the Calcasieu Parish Violent Crimes Task Force with a .40 caliber semi-automatic handgun and told detectives that defendant confessed to | 2shooting someone in the cemetery. Additionally, White had seen defendant with a black male on the evening of November 1,1994.
The police also questioned Davis’ friend, Donna Easton, who saw defendant and Davis together in the early morning hours of November 2, 1994 at the convenience store where she worked. Easton knew that Davis was a homosexual, and she assumed that Davis and defendant were lovers.
*228 On November 4, 1994, Detective Donald DeLouche, director of the Violent Crimes Task Force, arrested defendant at a trailer where he had been staying. At the trailer, defendant signed a waiver of rights form as well as a form permitting the police to search the residence. Defendant did not make any statements, nor did he request an attorney, en route to the Task Force headquarters.
At the Task Force office, Detective Denise Hughes, the lead investigator on the case, reviewed a rights form with defendant. Although defendant signed the form, he requested an attorney as Detective Hughes explained the waiver section of the form to him. Detective Hughes concluded the interview and handed the form to Detective De-Louche, who wrote that defendant requested an attorney at 1:53 p.m.
Detective Hughes then told defendant he would not have another “opportunity” or “chance” “to tell us his side of the story.” She also gave him a copy of the arrest warrant and the affidavit of probable cause, although she did not know that the affidavit was attached to the warrant. After reading these papers, defendant said, “Wait a minute, I didn’t shoot anybody in the back of the head. I want to tell y’all what happened.” Hughes reminded defendant that she could no longer discuss the case because he requested an attorney. Defendant replied that he had changed his mind. Detective De-Louche noted on the form that at 1:54 p.m. defendant agreed to speak with them.
13At 2:09 p.m., the detectives began videotaping defendant’s statement. Defendant initially claimed that he shot Davis in self defense when Davis attempted to rob him at knife point. After further questioning, defendant said that he shot Davis because Davis had been making unwelcome sexual advances to him all evening.
Deputy Harold Brady booked defendant into the Calcasieu Parish jail that evening. Deputy Brady later testified that the following exchange occurred as he fingerprinted defendant:
[H]e was just coming in the jail and I asked him why he came in, why he was here. And then he stated if I remember right, that he had killed somebody. And I said, “You killed somebody?” He said, “Yeah, I killed him.” I said, ‘Well why did you kill him?” He said, “Because he’s a faggot and I don’t like faggots.” And I said, “You killed one faggot to come into a jail where they have literally hundreds of 'em?” And he didn’t say anything. And then he said, ‘Well, if he wouldn’t of messed with me, I think at my sister’s grave, or my mother’s grave, that I wouldn’t have killed him.”
Deputy Michael Soileau and Deputy Kenneth Higginbotham, who were also working at the jail that evening, overheard defendant state, “I killed the guy because he was a faggot” and “he kept messing with me.”
The next day, defendant requested to speak to a detective. Detectives Hughes and DeLouche met defendant at the correctional center where they again advised him of his rights. Defendant then told them that he was sorry, that he didn’t mean to do it, but that he had shot the man because he was scared.
Defendant was initially charged with first degree murder, but the grand jury returned a true bill for only second degree murder. Prior to trial, the trial court denied defendant’s motion to suppress his videotaped confession, the statements made to Officer Brady, and the subsequent statements to Detectives Hughes and DeLouche. The trial court found that Detectives DeLouche and Hughes concluded the interview when defendant requested an attorney and that Detective Hughes further reminded |4defendant that she could no longer discuss the case with him, when defendant indicated that he wished to speak with them. The trial court did not consider Hughes’ remarks to be interrogation, nor did the court find error in her handing defendant a copy of the arrest warrant and affidavit. The trial court concluded that defendant reinitiated contact with the officers after he decided to give a free and voluntary statement.
Assignment of Error No. 1
In this assignment, defendant argues the trial court erred in denying his motion to suppress the statements and confession made to the Violent Crimes Task Force. He ar *229 gues that Detective Hughes’ conduct of stating that this was his only opportunity to tell them his side of the story, combined with handing him the affidavit and arrest warrant, constituted impermissible interrogation after he invoked his right to counsel.
To protect the privilege against self-in-erimination, the police must terminate interrogation of an accused in custody if the accused requests the assistance of counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Once an accused has expressed his desire to deal with law enforcement officials only through counsel, he “is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981).
“When an accused invokes his Miranda right to counsel, the admissibility of a subsequent confession or incriminating statement is determined by a two-step inquiry: (1) did the accused initiate further conversation or communication; and (2) was the purported waiver of counsel knowing and intelligent under the totality of the circumstances.” State v. Koon, 96-1208, p. 7 (La.5/20/97); — So.2d -, - [1997 WL 261370], With guidance from Koon, we frame the issue in this case as follows: did the |5detectives continue to interrogate defendant such that his further statements cannot be deemed an initiation of further conversation “because the interrogation never ended.” Id. at p. 8; — So.2d at-.
In Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980), the Court extended the Miranda safeguards to the “functional equivalent” of interrogation, which the Court defined as “any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.”
Nonetheless, the Court in Innis concluded that the police did not “interrogate” the defendant. In Innis, two police officers commented about their concern that handicapped children might injure themselves if, by chance, they found a missing murder weapon. This musing between the officers prompted the defendant, who had previously requested counsel, to reveal the location of the weapon. The Court found this conduct was not the “functional equivalent” of interrogation because the officers’ “off-hand remarks” were not express questions directed to the defendant and the officers had no reason to suspect that the defendant was susceptible to an appeal concerning the safety of handicapped children.
Since deciding Innis, the Court has rarely visited the question of what conduct amounts to “interrogation.” See Lewis v. Florida, 486 U.S. 1036, 108 S.Ct. 2025, 100 L.Ed.2d 612 (1988) (Mr. Justice White dissenting from denial of certiorari). However, Arizona v. Mauro, 481 U.S. 520, 529-30, 107 S.Ct. 1931, 1937, 95 L.Ed.2d 458 (1987), offers the following guidance: “In deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in Miranda and Edwards: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment.”
^In Mauro, the Court again found no Miranda violation. The court held that the police's conduct in allowing the defendant to speak with his wife, and openly taping the conversation, did not amount to interrogation because the defendant was not subjected to “compelling influences, psychological ploys, or direct questioning.” Id. at 529, 107 S.Ct. at 1937.
Consistent with Mauro, the United States Court of Appeals for the Fifth Circuit has “rejected an interpretation of Edwards’ prophylactic rule that is divorced from the context of badgering police conduct from which that rule sprang.” Plazinich v. Lynaugh, 843 F.2d 836, 838-39 (5th Cir.1988), cert. denied, 488 U.S. 1031, 109 S.Ct. 841, 102 L.Ed.2d 973 (1989) (emphasis added). In that case, the defendant first requested counsel but then confessed to murder shortly after the police informed him that his aecom-phce/girlfriend had attempted suicide be *230 cause she feared that she alone would be blamed for the crime. The court found no violation, noting that the remark was not inquisitorial and that the officer had no reason to expect an immediate response. “It is difficult to conceive, however, that one informational comment made to a defendant can be so ‘overreaching’ as to violate the spirit of Edwards.” Id. at 839.
The “overreaching” in Edwards, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, occurred when the police visited the defendant in jail and insisted he “had to” talk to them, even though he had previously requested an attorney and he did not want to discuss his case at that time. In State v. Abadie, 612 So.2d 1 (La.1993), cert. denied, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993), the Supreme Court of Louisiana found a similar violation, where police repeatedly requested that the defendant submit to a polygraph examination after he had made several unsuccessful attempts to obtain counsel. More recently, in Koon, — So.2d-, the court found error where the police repeatedly questioned the defendant about his Miranda rights to “keep him talking.” Id. at p. 9, — So.2d-. See also instate v. Lee, 524 So.2d 1176, 1182 (La.1987), the police confronted the defendant with a picture of the victim and asked him “why would he shoot this young boy.” The court found the police's conduct clearly amounted to interrogation because the remarks were not “off-hand,” but directly linked to the crime, and the defendant was subject to express questioning.
For the following reasons, we do not find similar overreaching in this case. The record clearly supports the trial court’s finding that the detectives ceased questioning defendant when he requested counsel. When defendant began speaking again, Detective Hughes reminded him that she could no longer discuss the case with him. Her comment that this was the “last opportunity” that defendant would have to “tell us” his story does not imply, as in Edwards, that defendant “had to” talk or that defendant would not be permitted to speak with someone else.
Nor can we find error in Detective Hughes’ giving defendant a copy of the warrant for his arrest and the supporting affidavit. Detective Hughes testified that she gave defendant these documents to inform him that he was being charged with first degree murder and that she did not know the affidavit was attached to the warrant. Detective Hughes had no way of knowing that defendant would blurt out “I didn’t shoot anybody in the back of the head,” when the evidence gathered irrefutably established that the victim died from a gunshot wound to the back of the head.
In United States v. Payne, 954 F.2d 199 (4th Cir.1992), cert. denied, 503 U.S. 988, 112 S.Ct. 1680, 118 L.Ed.2d 396 (1992), the defendant made incriminating statements in response to an agent’s description of certain inculpatory evidence. The court observed, “Although the supreme court has not directly addressed this question, there are indications that mere declaratory descriptions of incriminating evidence do not invariably constitute interrogation for Miranda purposes.” Id. at 202. Rather than |8characterizing this conduct as “overreaching,” the court opined that information about the evidence against a suspect may “contribute to the intelligent exercise of his judgment regarding what course of conduct to follow.” Id. See also Enoch v. Gramley, 70 F.3d 1490, 1500 (7th Cir.1995), cert. denied, — U.S. -, 117 S.Ct. 95, 136 L.Ed.2d 50 (1996), where the court stated, “Briefly reciting to a suspect in custody the basis for holding him, without more, cannot be the functional equivalent of interrogation.”
Detective Hughes’ conduct in handing defendant the warrant and affidavit served only to inform defendant of the crime for which he was charged and gave defendant a brief description of the evidence against him. Under the above jurisprudence, this conduct cannot be considered “interrogation.” Neither Detective Hughes nor Detective DeLouche engaged in “police badgering, overreaching or subtle but repeated efforts to wear down an accused’s resistance and make him change his mind.” Koon, p. 7; — So.2d at-.
Defendant had twice been advised of his rights. Unlike the officers in Koon, Detectives DeLouche and Hughes stopped all questioning when defendant requested an at *231 torney. After defendant said, “I want to tell y’all what happened,” Detective Hughes reminded him that she could no longer discuss the ease with him because he asked for a lawyer. Defendant’s outburst was prompted by a written description of the victim’s fatal wound. The detectives could not have foreseen that this information — which they knew to be accurate — would prompt defendant to exclaim that the victim had not been shot in the back of the head. For these reasons, we agree with the trial court that defendant’s confession and subsequent statements were made freely and voluntarily after a knowing and intelligent waiver of his rights.
19Assignment of Error No. 2
In this assignment of error, defendant contends the verdict is contrary to the law and evidence.
To obtain a conviction, the State must prove the elements of the crime charged beyond a reasonable doubt. Defendant was convicted of second degree murder, which is defined as the lulling of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(A)(1). In this assignment, defendant contends that substantial evidence admitted at trial should have reduced his criminal culpability for Davis’ death to manslaughter. La.R.S. 14:31(A)(1) defines manslaughter as:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.
In State v. Jack, 596 So.2d 323, 327 (La. App. 3 Cir.), writ denied, 600 So.2d 611 (La.1992), this court stated:
Once the jury finds the elements of second-degree murder then it has to determine whether the circumstances indicate that the crime was actually manslaughter. State v. Maddox, 522 So.2d 579 (La.App. 1 Cir.1988).
The standard on review is, viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986).
Defendant contends he shot Davis because Davis made unwanted homosexual advances toward him and touched various parts of his body. He argues that Davis’ conduct was sufficient provocation to deprive him of his self-control and cool | ^reflection. Thus, he contends this court should reduce his conviction from second degree murder to manslaughter.
Donna Easton had known Davis for ten to twelve years and was aware that he was a homosexual. She was working at a convenience store when defendant and Davis came in around 4:00 a.m. on November 2,1994, the date of the crime. According to Easton, while defendant and Davis were drinking beer outside the store, Davis rubbed defendant’s hand in an affectionate manner. She assumed from this gesture that Davis and defendant were lovers. She further testified defendant did not pull his hand away in order to avoid the gesture.
John White had known defendant for several years. He testified that he sent defendant to the store to purchase a condom on November 1, 1994, the evening before the crime. Because defendant was gone for a long time, White decided to purchase the condom himself. When he returned, he saw defendant with a black man in a white ear in the parking lot of his apartment building. Defendant told him the man was a friend and that they were going to buy some beer and get drunk. The following day, defendant told him he had shot someone at the LeBleu Cemetery in self-defense because the man had attempted to attack him with a knife.
Joseph Smith, defendant’s stepbrother, testified that defendant told him he shot Davis in self-defense because Davis tried to stab him and threatened him with a gun.
*232 The defense called David Prince, a forensic serologist, as its only witness. Prince testified that he examined the body of the victim and discovered seminal acid phosphatase in the victim’s rectum. In his professional opinion, this substance could not have come from defendant because the specimen contained “0” type blood group substances and defendant had type “A” blood.
| nAfter reviewing the trial transcript, we do not find proof of provocation sufficient to reduce defendant’s conviction from second degree murder to manslaughter. Although some evidence supports the conclusion that Davis was a homosexual and may have had designs on defendant, there is scant evidence to support a determination that homosexual advances by Davis provoked defendant to shoot him. Defendant’s conflicting accounts of why he shot the victim make it difficult to determine his true motivation for the act. This assignment of error lacks merit.
Decree
For the above reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.
THIBODEAUX, J., dissents and assigns reasons.