JiSULLIVAN, Judge.
This matter is on remand from the supreme court. In our original opinion, we affirmed defendant’s conviction of second degree murder, finding (1) no error in the admission of three sets of inculpatory statements, two of which defendant gave on the day of his arrest and one on the following day and (2) the evidence supported a conviction of second degree murder rather than manslaughter. Upon defendant’s application, the supreme court found that the statements made on the day of defendant’s arrest were solicited in violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and remanded the case for this court to determine whether the admission of the defective statements was harmless. State v. Reeves, 96-1186 (La.App. 3 Cir. 6/4/97); 696 So.2d 226, writ granted in part and denied in part, 97-1806 (La.6/26/98); 714 So.2d 696.
^Defendant was convicted of murdering Arnold Keith Davis, whose body was found in a cemetery near Chloe, Louisiana, with one bullet in the back of the head. Defendant became a suspect in the crime after three of his acquaintances presented the police with the murder weapon and reported that defendant had confessed to them. Defendant and Davis had also been seen together several hours before the crime.
After his arrest, defendant gave an hour-long videotaped confession that was played before the jury at his trial. In that confession, defendant first claimed that he shot Davis in self-defense because Davis attempted to rob him at knife point. After further questioning, defendant admitted on the videotape that he shot Davis because Davis had made unwelcome sexual advances to him all evening. The officer who fingerprinted defendant at the jail testified that defendant said he killed Davis “[bjecause he’s a faggot and I don’t like faggots.” Two other officers, also present at the fingerprinting, testified that they overheard defendant state that he “killed the guy because he was a faggot” and that “he kept messing with me.” While incarcerated on the day after his arrest, the defendant requested to speak with the two lead detectives again. He told them at that time that he did not mean to kill the victim, but rather he shot the man because he was scared. The videotaped confession and the statements made during the fingerprinting process are the statements that the supreme court ordered suppressed.
In State v. Corley, 93-1934, pp. 5-6 (La.3/11/94); 633 So.2d 151, 154, the supreme court set forth the following standard for harmless error review:
This Court has both the authority and the obligation to review the record de novo to determine an error’s harmfulness. State v. Smith, 600 So.2d 1319 (La.1992); see also Arizona v. Fulminante, 499 U.S. 279,|3 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In doing so, we must begin with *1293 the premise that the other,- lawfully admitted evidence is sufficient to support the jury’s verdict, Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). The task of a reviewing court conducting a harmless error analysis is to .determine whether the error contributed to the verdict or whether “the force of the evidence presumably considered by the jury in accordance with the instructions [of the court] is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [error].” Yates v. Evatt, 500 U.S. 391, 405, 111 S.Ct. 1884, 1893-94, 114 L.Ed.2d 432 (1991).
More recently, in State v. Koon, 96-1208, p. 9 (La.5/20/97); 704 So.2d 756, 763-64, the supreme court stated:
The State argues that even if the statement should have been suppressed, any error in admitting the statement was harmless. Arizona v. Fulminante, 499 U.S. 279, 311, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (when reviewing the erroneous admission of an involuntary confession, the appellate court simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt). An error is harmless if it is unimportant in relation to the whole and the verdict rendered was surely unattributable to the error. State v. Seals, 93-0305, p. 12 (La.11/25/96), 684 So.2d 368, 377, cert. denied, — U.S. -, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997) (citing State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. denied, — U.S. -, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996)).
In Corley, 633 So.2d 151, the supreme court concluded that the erroneous admission of oral and handwritten exculpatory statements made by the defendant within hours of the murder of his wife was not harmless beyond a reasonable doubt. After his arrest, the defendant told the police that he and his wife were “parking” in the woods when two intruders attacked and killed her. However, at his trial, the defendant presented psychiatric evidence to prove that he killed his wife in an alcoholic blackout. The supreme court was unable to say that the jury’s rejection of intoxication and insanity defenses was surely unattributable to the erroneous admission of the exculpatory statements, when those statements suggested that the Udefendant’s memory was not as fragmentary as he claimed and a handwriting expert testified that the written statement showed no evidence of impairment on.the night of the offense. In Koon, 704 So.2d 756, however, the supreme court rejected arguments that the erroneous admission of the defendant’s statements concerning his motive for killing his estranged wife and her parents seriously undermined an intoxication defense. In addition to .psychiatric testimony that the defendant knew right from wrong on the night of the offense, the supreme court considered the .defendant’s admissible statements, including,, that he shot his wife because she “pushed him too far” in their divorce proceedings.
' In the instant case, the admissible evidence heard by the jury included inculpatory statements that defendant had made to both the police and to his companions. The two lead detectives testified that on the day after defendant’s arrest he told them that he was ‘ sorry he shot the victim. Two of defendant’s friends, Douglas Schysm and John White, as well as defendant’s step-brother, Joseph Smith, all testified that defendant admitted his guilt to them. Schysm, who spoke to defendant at about 6:00 a.m. on the morning of the murder, testified that defendant said he had shot someone that night and he did not know what to do. White, who had known defendant for four or five years, testified that defendant said he shot someone in the Chloe cemetery in self-defense because the victim had pulled a knife on him. Smith also related a similar conversation in which defendant said he shot someone in self-defense.
In addition to defendant’s statements, the jury heard evidence that defendant and Davis were seen together in the late evening and early morning before the crime. White testified that defendant left White’s apartment, where defendant had been 15staying for • a few days, with an unidentified black male that evening. When White asked defendant *1294 where he was going, defendant replied that he was leaving with a friend to get drunk. Donna Easton, a long-time friend of Davis’, testified that Davis and defendant stopped by the convenience store where she worked at approximately 4:00 a.m. on the morning of the crime. Easton testified that she visited with them for thirty to forty minutes. She knew that Davis was a homosexual, and she assumed that Davis and defendant were lovers.
Defendant did not argue self-defense at trial, but the issue was raised in the State’s case-in-chief through the testimony of White and Smith. The State, however, also presented evidence that would negate such a claim. Dr. Terry Welke, Chief Deputy Coroner for Calcasieu Parish, testified that the fatal projectile traveled from the back to the front of the victim’s head. The absence of soot or gunpowder around the contact wound indicated that the gun was fired from at least two to two-and-a-half feet away.
After considering defendant’s numerous admissions of guilt, the testimony placing defendant in the victim’s company, and the physical evidence that the victim was shot in the back of the head, we find that the admission of the videotaped confession and other statements taken in violation of defendant’s right to counsel was harmless beyond a reasonable doubt. Defendant’s conviction and sentence are, therefore, affirmed.
AFFIRMED.
THIBODEAUX, J., dissents and assigns written reasons.